CRAWFORD, adm'r, *et al.* v. GINN.

1. Trust: ENFORCEMENT OF. It appeared from all the facts in the case, and alluded to in the opinion, that defendant bid off and acquired title to the lands in controversy at sheriff's sale, under an arrangement with the judgment debtor that it should be acquired and held by him as security for sums advanced in payment of his bids at the sheriff's sale, and for certain other claims. *Held*, that the trust should be enforced according to its terms, and the defendant ordered to convey to plaintiff certain of the lands remaining unsold in defendant's hands after his reimbursement, and to account for the rents and profits thereof.

2. Judicial sale: ESTOPPEL OF DEFENDANT. Where proceedings in a sheriff's sale are with the assent and approbation of the judgment defendant, he is thereby estopped from afterward objecting to its regularity.

3. Administrator: RENTS: PARTIES. Rents of real estate accruing before the death of the decedent are assets belonging to the administrator, and he may maintain suit therefor in his own name.

*Appeal from Winnesheik District Court.*

MONDAY, DECEMBER 18.

ACTION in chancery brought by John Wholihan in his life-time. Pending the suit he died, and the administrator of his estate and his heirs are made plaintiffs. The petition and an amended petition for grounds of relief sets out that Wholihan in his life-time was the owner of 680 acres of land which were sold upon execution to satisfy certain judgments, and purchased by defendant; that the purchase was made by defendant for the benefit of Wholihan, to aid him in paying the judgment; that, prior to the sheriff's sale, Wholihan conveyed the land to defendant under an agreement that defendant should advance a certain sum to pay the liens thereon, the land to be sold upon certain time and the proceeds applied to reimburse defendant, and the balance paid to Wholihan; that through the fraud of defendant, this agreement was canceled but the lands were not reconveyed to Wholihan, that the deed was filed for record and withdrawn from the files but is still held by defendant. The petition also charges fraudulent acts of defendant, whereby Wholihan's confidence was obtained and he was induced to assent to the purchase of the land at sheriff's sale by defendant. It is claimed that defendant holds the land as a trustee for plaintiff, and the relief asked is that he be required to account therefor; that he be charged with the sum for which he has sold a part of said lands, and with rent received for a part thereof that remains in his hands, and that he be credited by the amount he has actually paid upon the judgment against Wholihan, and the difference he be adjudged to pay plaintiffs as well as to convey to them the lands that have not been conveyed by him. A decree was rendered upon a trial on the merits requiring defendant to convey to plaintiffs a part of the lands unsold and certain other lands

received by defendant in payment of the lands transferred by him.

Both plaintiffs and defendant appeal.

*L. Bullis* for the plaintiffs.

*John T. Clark* and *Morse & Brown* for the defendant.

BECK, Ch. J.— I. Whether defendant acquired the title of the land for the benefit of Wholihan, under an arrangement to the effect that it should be held by him as security for sums advanced by him in payment of his bids at sheriff's sale and of certain judgments, is the main question in the case. Plaintiffs insist that the title of the land was acquired under such an arrangement; defendant maintains that his purchase was absolute, and that no agreement existed between himself and Wholihan whereby a trust was raised.

*1. TRUST: enforcement of.*

The evidence, to our minds, very satisfactorily establishes the fact that defendant acquired the title to the land under an arrangement with Wholihan, whereby he was to receive certain benefits and advantages. We do not deem it profitable to enter upon an extended discussion of the evidence in order to support our conclusion by argument; such is not our habit in cases of this kind in which no controverted questions of law are found. We will briefly state certain facts which we think are established by the evidence and support the conclusion we have announced. Wholihan was largely indebted. There were numerous judgments and some mortgages upon his lands which, though valuable, if disposed of at sheriff's sale, would not probably pay the liens upon them. A contract was entered into between the parties under which defendant was to advance certain sums to discharge the liens and take a deed of the lands, which were to be sold by him and the proceeds applied to reimbursing the amount to

be thus advanced, with a sum added thereto, as compensation for the advancement, and the balance was to be paid to Wholihan. If the sale of the land could not be effected within two years by the exercise of diligence on the part of defendant, Wholihan was to have no claim upon the proceeds of the land. The liens having been ascertained to exceed the sum contemplated in the agreement, it was by mutual consent canceled. A deed to defendant for the land had been executed and filed for record. It was withdrawn from the recorder's office, but no conveyance was made to Wholihan by defendant. Under this arrangement defendant appears to have acquired a judgment against Wholihan. After the cancellation of the agreement the parties seem to have entered into another agreement. We will briefly state some facts which, to our mind, establish its existence and terms. That Wholihan had confidence in defendant and relied upon him for assistance is shown by the fact of the execution and cancellation of the contract just referred to as well as by other circumstances disclosed by the evidence. After the contract was canceled, defendant at once made arrangements with Wholihan to bid off the land upon the executions. That such was the understanding between the parties there can be no doubt. Wholihan withdrew a notice he had filed requiring the land to be sold subject to redemption, and directed that it should be sold upon appraisement and without redemption. He also waived his homestead right in the land.

He relied upon the advice of defendant in the selection of the appraisers, and assented to the sale of more land than was necessary to satisfy the executions in the hands of the sheriff. He knew that defendant had opened negotiations for the sale of the land before his purchase under the executions, and was advised that the consideration defendant demanded was greater than the amount of the bid at the sheriff's sale. Other acts of the parties as well

as declarations of defendant, which we do not deem it necessary to state, are inconsistent with any other conclusion than that the purchase was made by defendant with a view to Wholihan's benefit. We are unable to arrive at the conclusion that all the land purchased by defendant at the sheriff's sale was to be held by him as security for the sum advanced in the purchase and other amounts paid by him in the discharge of liens, to be reconveyed to Wholihan when he should reimburse defendant. It is not shown what was the precise amount advanced by defendant. It did not exceed $7,000. He sold a part of the land, 575 acres, to the party with whom he had negotiations before his purchase, for $8,000 in installments running from one to five years. He received also 640 acres of land in Missouri valued at $2,000, making the whole sum received $10,000. Now, as we have said, Wholihan knew of the negotiations for this sale, and the terms proposed before defendant had acquired title to the land. But after it was consummated, he claimed nothing more than 25 acres of the land retained by defendant and the Missouri lands acquired in the transaction. It cannot be supposed that immediately after defendant's purchase Wholihan would have misrepresented his rights to his own prejudice. We are of opinion that the 80 acre tract unsold, as well as the 25 acres was included in this arrangement. Our reason for this opinion is this: It seemed to be the understanding that Wholihan was to retain an interest in the lands not sold by defendant and the Missouri lands. But at the time of the conversation between himself and defendant, upon which we rely to fix the parties' rights, Wholihan did not know that the 80 acre tract was reserved in the sale made by defendant; this information was designedly kept from him. The claim made by Wholihan which covers, as we construe it, the 80 acre tract, will preclude plaintiffs demanding any thing more.

Our next inquiry is, on what condition does the claim

of Wholihan to the unsold land and the Missouri lands rest? The purchaser of the lands from defendant, whose opportunity for knowing and understanding the agreements between the parties was better than any other witness giving testimony in the case, states positively that defendant was to hold the title of these lands claimed by Wholihan until certain liens on the lands bought at sheriff's sale were paid; but he specifies only a mortgage held by Burdick & Patterson for about $5,000. We conclude that Wholihan's right to claim these lands depended upon the payment of certain liens, including Burdick & Patterson's. What those liens are, or their amount, we cannot determine from the abstract before us. It does not appear to have been prepared with the view of giving accurate information upon the details of the case, and its defects in this particular are poorly supplied by the arguments of counsel. In fact, we suspect that the evidence upon the point just suggested is indefinite and uncertain.

By adopting the foregoing view the arrangement between the parties approaches more nearly the terms agreed upon when the conveyance was made by Wholihan to defendant. As the parties' minds have been brought to assent to that arrangement, it is to be supposed that a subsequent agreement approaching thereto in its effect would meet the approval of each.

It is our opinion that plaintiffs are entitled to the Nassom lands, and the eighty and twenty-five acre tracts unsold by defendant after the discharge of the liens contemplated by the agreement between the parties; these are such liens as bound the lands bought by defendant. As it is impossible to determine the amount of these liens, or even how many they are, and who holds them, from the abstract upon which the case is submitted to us, the cause will be remanded to the district court for the determination of these questions on this branch of the case, unless counsel can agree thereon and enter into a stipulation as

to the amount, holders, etc., of these liens. If it be necessary, in order to arrive at the facts, the court will be permitted to hear additional evidence. The amount of rents received by defendant from the eighty and twenty-five acre tracts of land, and the taxes, etc., will be paid. Defendant will be charged with these rents, less taxes, and other proper items disbursed by him. A decree will be entered in this court awarding the Missouri lands and the twenty-five and eighty acre tracts to plaintiff upon payment of the liens specified.

II. We do not think that frauds on the part of defendant or such irregularity in the sheriff's sale has been shown as will defeat defendant's title, or require him to account for the full consideration named for the land. The irregularities in the sheriff's sale relied upon by the plaintiffs' counsel in their attack thereon, are cured by the assent of Wholihan to the proceedings. In fact the whole proceeding was with his knowledge and approbation, and under an agreement between him and defendant, as we have seen.

*2. JUDICIAL SALE: estoppel of defendant.*

III. Plaintiffs claim that as the deed from Wholihan to defendant is yet in his hands, and as he did not reconvey the property to Wholihan, he holds the land in trust under that deed as a mortgagor. This portion is answered by the fact that the agreement under which the statement of that deed was executed was set aside by the voluntary agreement of the parties, and another entered into. Now, it was competent for them to do this. The terms of the subsequent agreement we have attempted to discover, and we hold that it shall be enforced. It matters not whether defendant holds title under the deed of Wholihan or the sheriff's deed, plaintiffs' rights are the same. It is useless therefore to inquire as to the effect of Wholihan's deed.

IV. The administrator is a proper party. The personal assets of the estate it is shown are insufficient to pay the

**3. ADMINISTRA-**
**TOR: rents:**
**parties.**

debts established against it. Under these circumstances the administrator may, as it is his duty, devote the land to the payment of such claims. It is also shown that certain rents accruing before the death of Wholihan were received by defendant and, under this decision, he is required to account therefor. These rents are assets of the estate which can be recovered only by the administrator. Under this state of facts the administrator is a proper party to this action. *Gladson, admr.*, v. *Whitney et al.*, 9 Iowa, 267; *Laverty* v. *Woodward*, 16 id. 1; *Beezley* v. *Burgett*, 15 id. 192. The evidence of defendant as to facts which transpired before the death of Wholihan is not competent in this action; it was erroneously admitted by the court below and has not been considered by us. Rev., § 3982.

The decree of the district court will be modified to accord with this opinion, and the cause is remanded for that purpose.

Modified and affirmed.